Moss, Judge,
delivered the opinion of the court:
Section 22 of the Indian appropriation act of April 4, 1910, 36 Stat. 269, 284, conferred jurisdiction upon the Court of Claims “to hear and report a finding of fact, as between the United States and the Yankton Tribe of Indians of South Dakota, as to the interest, title, ownership, and right of possession of said tribe,” to a tract of land lying in the State of Minnesota embracing what is known as the Red Pipestone Quarries. In accordance with this authority the court reported findings of fact to Congress. 53 C. Cls. 67.
By act of June 3, 1920, 41 Stat. 738, Congress conferred jurisdiction upon the same court to adjudicate all claims of the Sioux Indians against the United States. Under that act plaintiffs instituted this action for the recovery of just compensation as will hereinafter be discussed. After the institution of the suit Congress more definitely conferred upon this court jurisdiction to determine from the findings of fact theretofore made “the interest, title, ownership, and right of possession of the Yankton Band of Santee Sioux Indians in and to the land known as the ‘Red Pipestone Querries.’” 43 Stat. 730. This court made an additional finding to the effect that the Indians had always been and were still permitted to visit and procure stone from the quarries and would continue to have that privilege as long as they might desire; and upon the theory that the only interest possessed by the Indians was this right, the court dismissed the petition. 61 C. Cls. 40. The judgment dismissing the petition was reversed by the United States Supreme Court, 272 U. S. 351, 359, that court holding “That the United States has taken and holds possession of the entire quarry tract of 648 acres * * * and since the Indians are the *430 owners of it in fee, they are entitled to just compensation as for a taking under the power of eminent domain.”
By an act of Congress of date February 16, 1891, 26 Stat. 764, the Secretary of the Interior was authorized and directed to establish in each of the States of Wisconsin, Michigan, and Minnesota an Indian industrial training school. The land involved in this action was selected as the site for the establishment of the school in the State of Minnesota, and same was taken over by the Government in the latter part of February, 1891.
The sole question for determination in this case is the fair market value of the property taken as of the latter part of February, 1891.
The Red Pipestone Quarries from the earliest times have held an important place in the tribal life of the American Indian. This locality was, through unnumbered generations, the scene of periodical conferences of American Indians of all tribes. It was reverently regarded by the Indians as, perhaps, the most important single locality in Indian legend and lore. As they gathered here in vast numbers from far and near, all animosities and enmities were, for the time, forgotten in a great convention of peace. Here they procured the unique material, not found elsewhere, for the production of the peace pipe and other sacred symbols, and discussed questions affecting intertribal relations. It has been memorialized in literature and has furnished the theme for a rich heritage of quaint legend and tradition. The historic interest attaching to this property has at all times been considered by the Government as a proper element of value in its negotiations with plaintiffs. It is reflected in the evidence adduced on plaintiffs’ behalf in this action. It is an element that is difficult of measurement. Plaintiffs earnestly insist that under the evidence this property was of the value of not less than $200,000 at the time of the taking. The tract in question is composed of about 240 acres of farming lands, 160 acres of grazing lands, the remainder of 248 acres being stone lands, including the quarries, which are confined to an area of something less than one square mile. It appears from the record that in 1897, six years after the taking, Con *431 gress directed the Secretary of the Interior to negotiate with the Indians for the purchase of the land. The negotiations which followed resulted in an agreement between the Indians and representatives of the Government for the transfer of the title to the land by the Indians to the United States for the sum of $100,000. This agreement was transmitted to Congress and referred to the "Senate Committee on Indian Affairs. A majority of the committee reported adversely, and no further action seems to have been taken. At another period the Government offered $75,000 for the property, which offer was rejected. A substantial portion of this offer was based on historic value. It should be remembered that under proper regulations plaintiffs are secure and will always remain secure in their rights and privileges in connection with the use of- the Pipestone Quarry. The court has reached the conclusion, after a full consideration of all the evidence, that the fair market value of the property involved herein in the latter part of February, 1891, was $100,000. Plaintiffs are entitled to recover that sum with interest, and it is so ordered and adjudged.
Gbaham, Judge; Booth, Judge; and Campbell, GMef Justice, concur.
GkeeN, Judge, took no part in the decision of this case.